## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Consolidated Container Company, LLC and Reid Plastics Group, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. |
| v. | ) ) ) | |
| Davinci Capital, S.A.P.I. de C.V., Signature Capital, S.A.P.I. de C.V. SOFOM E.N.R., Grupo Innovador Administrativo, S.A. de C.V., Industrias y Servicios Tecnicos de Bajio S.A. del C.V., and Reid Mexico, S.A. de C.V., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs Consolidated Container Company, LLC and Reid Plastics Group, LLC bring the following Complaint against Davinci Capital, S.A.P.I. de C.V., Signature Capital, S.A.P.I. de C.V. SOFOM E.N.R., Grupo Innovador Administrativo, S.A. de C.V., Industrias y Servicios Tecnicos del Bajio S.A. de C.V., and Reid Mexico, S.A. de C.V. (collectively "Defendants"), and state as follows:

## THE PARTIES

1.      Plaintiff Consolidated Container Company, LLC ("CCC") is a limited liability company organized under the laws of Delaware with its principal place of business located at 3101 Towercreek Parkway, Suite 300, Atlanta, Georgia 30339.

2.      Plaintiff Reid Plastics Group, LLC ("Reid Plastics") is a limited liability company organized under the laws of Delaware with its principal place of business located at 3101 Towercreek Parkway, Suite 300, Atlanta, Georgia 30339.

3.      Defendant Davinci Capital, S.A.P.I. de C.V. ("Davinci") is a private equity firm organized under the laws of Mexico with its principal place of business at Col. Lomas de Chapultepec C.P. 11000, Del. Miguel Hidalgo, Mexico, D.F.

4.      Defendant Signature Capital, S.A.P.I. de C.V. SOFOM E.N.R. ("Signature Capital") is a Mexican Corporation with its principal place of business located in Mexico.  Signature Capital also has operations in the United States at 270 Park Avenue, New York, New York 10017.

5.      Defendant Grupo Innovador Administrativo, S.A. de C.V. ("Grupo Innovador") is a Mexican Corporation with its principal place of business in Mexico.  Grupo Innovador has operations in Irapuata, Guanajuato.  Additional locations in Mexico also include Calle Lomas Del Pedregal No. 507 in Samalanca, Guanajuato.

6.      Defendant Industrias y Servicios Tecnicos del Bajio S.A. de C.V. ("Industrias Servicios") is a Mexican Corporation with its principal place of business in Mexico.

7.      Defendant Reid Mexico, S.A. de C.V. ("Reid Mexico") is a Mexican Corporation and manufacturer of polycarbonate bottles.  The company is based in

Cuautitlan Izcalli, Mexico and located at Guillermo Gonzalez Camarena 17, Parque Industrial Cuamatla in Cuautitlan Izcalli. Reid Mexico has an additional facility at Lib. Carr Norte, Qro-Leon Km 4.6 Col. Malvas, Centro in Guanajuato, Mexico. Reid Mexico is a former indirect subsidiary of CCC.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because there is diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in the United States District Court for the District of Delaware, and Defendants, by contract, have submitted to the jurisdiction of and venue in the United States District Court for the District of Delaware.

## FACTUAL ALLEGATIONS

10.    CCC is a manufacturer and supplier of rigid plastic packaging. CCC manufactures various types of containers using materials such as high density polyethylene, low-density polyethylene, polypropylene, polycarbonate, polyethylene terephthalate, polyvinyl chloride, high post-consumer regrind content resins, and multi-layer/barrier layer technology resins. The company services the dairy, water, beverage, food, household chemical, specialty chemical, automotive,

3

juice, and distributor industries. CCC employs over 2,300 team members in over 55 locations across the United States.

11.     Reid Plastics is a wholly owned subsidiary of CCC engaged in the manufacture and sale of rigid plastic packaging.

12.     Prior to October 4, 2013, CCC and its wholly owned subsidiary Reid Plastics owned and operated Reid Mexico. During this period, Reid Mexico manufactured polycarbonate bottles at its facilities in Mexico.

13.     CCC purchases polycarbonate resin from Sabic Innovative Plastics US, LLC ("Sabic") for use in the manufacturing of its products. Sabic supplied polycarbonate resin to CCC under a sales agreement ("PC Sales Agreement").

14.     The PC Sales Agreement designated CCC as the "Buyer." Pursuant thereto, CCC had the exclusive right to order polycarbonate resin and other products from Sabic. CCC could, however, designate other parties to act as "Additional Purchasers" under the PC Sales Agreement. These Additional Purchasers could independently order polycarbonate resin and other products from Sabic. CCC as the "Buyer" was required to guarantee timely payment of any products that Sabic delivered to an Additional Purchaser. CCC and Sabic could only add "Additional Purchasers" through written agreements that modified the PC Sales Agreement.

15.     Prior to October 4, 2013, Reid Mexico was listed on Attachment B of the PC Sales Agreement as an Additional Purchaser.

RLF1 10438626v.3

16.     On or about October 4, 2013, CCC and Reid Plastics entered into a purchase agreement ("Purchase Agreement") with Davinci, Signature Capital, Grupo Innovador, and Industrias Servicios (collectively "Purchasers").

17.     Under the Purchase Agreement, the Purchasers acquired all of the equity of Reid Mexico and Consolidated Plastics, S. de R.L. de C.V. then owned indirectly by CCC.

18.     To facilitate the sale to the Purchasers, CCC agreed to arrange the continued supply of polycarbonate resin to Reid Mexico.   Section 6.4 of the Purchase Agreement contemplated that the parties would execute a brokering agreement under which Reid Mexico would continue to receive polycarbonate resin from Sabic.

19.     In accordance with Section 6.4 of the Purchase Agreement, CCC executed with Sabic the Second Amendment to the PC Sales Agreement ("Second Amendment").   The Second Amendment designated Davinci as an Additional Purchaser.  In exchange for permitting Davinci to purchase products under the PC Sales Agreement, CCC guaranteed all of Davinci's payments to Sabic.

20.     Contemporaneously with the execution of the Purchase Agreement, CCC and Davinci entered into the Polycarbonate Resin Brokering Agreement ("Brokering Agreement").

21.     Under the Brokering Agreement, Davinci would make all purchases of polycarbonate resin through CCC.   Section 2 of the Brokering Agreement

indicated that "100% of the [polycarbonate resin] requirements of Reid Mexico" would be purchased through CCC. CCC would in turn place orders for Davinci's polycarbonate resin through Sabic.

22. Section 3(a)(iv) of the Brokering Agreement compensated CCC for its brokering services. Specifically, the CCC was entitled to receive a "brokering fee" of $0.02 per pound on all polycarbonate resin shipped from Sabic to Davinci.

23. Section 6 of the Brokering Agreement required Davinci to obtain and deliver to CCC a secured letter of credit that identified CCC as the secured creditor up to $1,000,000. The contractual provision states as follows:

> Secured Letter of Credit. As a condition of CCC brokering the PC Resin to Davinci, Davinci shall obtain and deliver to CCC simultaneous with the execution hereof, a secured letter of credit that identifies CCC as a secured creditor in the sum of up to $1,000,000 (the "Letter of Credit"). Except to the extent Davinci's payment obligations under this Agreement exceed $1,000,000, the Letter of Credit will solely and exclusively guaranty Davinci's payment obligations for PC Resin effectively received under this Agreement.

24. Section 7 of the Brokering Agreement reiterated Davinci's payment obligations to Sabic and that CCC guaranteed such payments. The contractual provisions state as follows:

> 7. Payment Terms.
>
> (a)    Payment terms to Sabic are net 60 days after Sabic's delivery of PC Resin to a designated Davinci facility.
>
> (b)    CCC is guaranteeing payment to Sabic on behalf of Davinci and reserves the right to access the Letter of Credit, for an amount equal to any amount due and owed by Davinci, if CCC is required to

6

make payments to Sabic due to Davinci's failure to make timely payments. …

25.    On or about December 20, 2013, representatives from Sabic informed CCC that Reid Mexico had outstanding invoices in the amount of $811,747.62.

26.    Defendants accrued these payment obligations even though it was their responsibility under the Purchase Agreement and Brokering Agreement to timely compensate Sabic for these amounts.

27.    CCC immediately contacted representatives from Defendants and requested that the companies pay the outstanding balance owed to Sabic.  From December 23 to present, representatives from Davinci and Reid Mexico have on numerous occasions assured CCC that they would satisfy these payment obligations to Sabic.  Davinci further acknowledged its obligations to pay for Reid Mexico's purchases from Sabic by letter dated February 10, 2014.

28.    Despite these representations, Defendants made only a single payment to Sabic of $100,000 prior to March 31, 2014.

29.    As a result of Defendants' failure to meet their payment obligations, Sabic sought payment from CCC for all outstanding balances.  Sabic also placed CCC on a credit hold and threatened to withhold shipment of resin to CCC for use in its other production facilities if CCC did not pay Reid Mexico's outstanding payables pursuant to the guarantee in the PC Sales Agreement

7

30.     These actions have damaged CCC's business relationship with Sabic, a key supplier of polycarbonate resin and other products.

31.     On March 28, 2014, CCC paid Sabic $611,747.62 in partial payment of the sum owed by Defendants.   On March 31, 2014, CCC paid Sabic the remaining Reid Mexico balance of $100,000.   The amount paid to Sabic totaled $711,747.62.

32.     On May 7, 2014, Reid Mexico transferred $60,000 to Sabic in partial satisfaction of the amount owed to CCC.   As CCC had already extinguished Reid Mexico's obligation, Sabic requested that Reid Mexico execute a written authorization to allow a transfer of the sum to CCC.   On May 28, representatives from CCC requested that Reid Mexico provide Sabic with written authorization to transfer the $60,000 payment back to CCC to partially satisfy the debt.   To date, Reid Mexico has provided no such authorization.

33.     To date, Davinci has not executed or delivered the secured Letter of Credit to CCC described under Section 6 of the Brokering Agreement.

34.     Correspondence between CCC and Davinci indicate that Davinci has no intention of obtaining the Letter of Credit despite the contractual provision requiring it to do so.

35.     On information and belief, since executing the Purchase Agreement and Brokering Agreement, Davinci and Reid Mexico have purchased and continue to purchase polycarbonate resin from vendors other than Sabic.

8

36.     On information and belief, Davinci has placed and continues to place orders for polycarbonate resin through intermediaries and brokers other than CCC in violation of the Brokering Agreement.

<b>COUNT ONE: Breach of Contract –<br>Purchase Agreement & Brokering Agreement<br><u>(Davinci, Signature Capital, Grupo Innovador,<br>Industrias Servicios, and Reid Mexico)</u></b>

37.     Paragraphs 1 through 36 are incorporated by reference as if set forth fully herein.

38.     Defendants failed to pay Sabic the amounts required under the Purchase Agreement and the Brokering Agreement.

39.     Defendants' failure to pay Sabic the amounts required under the Purchase Agreement caused CCC to pay Sabic approximately $711,747.62.

40.     As a result, Defendants breached the provisions of the Purchase Agreement.

41.     As a direct result of the wrongful conduct of Defendants, CCC suffered damages.

<b>COUNT TWO: Breach of Contract – Brokering Agreement<br><u>(Davinci and Reid Mexico)</u></b>

42.     Paragraphs 1 through 36 are incorporated by reference as if set forth fully herein.

43.     Davinci and Reid Mexico failed to execute or deliver the secured Letter of Credit required under the Brokering Agreement.

9

44.     Davinci and Reid Mexico have purchased and continue to purchase polycarbonate resin from vendors other than Sabic and to coordinate such purchases through brokers and intermediaries other than CCC.

45.     Davinci's and Reid Mexico's refusal to purchase polycarbonate resin from Sabic deprives CCC of the brokering fee to which it is contractually entitled.

46.     Davinci and Reid Mexico breached the provisions of the Brokering Agreement as a result of these actions.

47.     As a direct result of the wrongful conduct of Davinci and Reid Mexico, CCC suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

a) That the Court award damages against all Defendants in favor of CCC in the amount proven at trial;

b) That the Court award pre-judgment interest pursuant to the law;

c) That CCC be awarded reasonable attorneys' fees and expenses of litigation; and

d) That the Court award other relief that this Court deems just and proper under the circumstances.

RLF1 10438626v.3

*/s/ Samuel A. Nolen*

Of Counsel:

James C. Grant
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
(404) 881-7859
jim.grant@alston.com

Dated:  June 24, 2014

Samuel A. Nolen (#921)
Kelly E. Farnan (#4395)
Anthony Flynn, Jr. (#5750)
Richards, Layton, Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700
nolen@rlf.com
farnan@rlf.com
flynn@rlf.com

*Attorneys for Plaintiffs Consolidated Container Company, LLC and Reid Plastics Group, LLC*

11