## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSOLIDATED CONTAINER COMPANY,LLC, and REID PLASTICS GROUP, LLC, | § § § § | |
| Plaintiffs/Counter-Defendants, | § § | |
| v. | § § | Civil Action No. 1:14-cv-00807-LPS |
| DAVINCI CAPITAL, S.A.P.I. de C.V., SIGNATURE CAPITAL, S.A.P.I. de C.V. SOFOM E.N.R., GRUPO INNOVADOR ADMINISTRATIVO, S.A. de C.V., INDUSTRIAS Y SERVICIOS TECNICOS de BAJIO S.A. del C.V., and REID MEXICO, S.A., de C.V., | § § § § § § § § | |
| Defendants/Counter-Plaintiffs. | § | |

## DEFENDANTS/COUNTER-PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS/COUNTER-DEFENDANTS' COMPLAINT AND COUNTERCLAIMS

Defendants Davinci Capital, S.A.P.I. de C.V., Signature Capital, S.A.P.I. de C.V. SOFOM E.N.R., Grupo Innovador Administrativo, S.A. de C.V., Industrias y Servicios Tecnicos de Bajio S.A. del C.V., and Reid Mexico, S.A., de C.V. (collectively, "Defendants/Counter-Plaintiffs" or "Purchasers"), by and through counsel, hereby answer, and assert affirmative defenses to, the Complaint filed in the above-captioned action by Plaintiffs/Counter-Defendants Consolidated Container Company, LLC ("CCC") and Reid Plastics Group, LLC (collectively, "Plaintiffs/Counter-Defendants"). Additionally, Defendants/Counter-Plaintiffs assert the counterclaims outlined below. Each paragraph in this Answer responds to the corresponding paragraph in the Complaint. All allegations not expressly admitted are hereby denied.

## THE PARTIES

1.        Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 and therefore deny those allegations on that basis.

2.        Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 2 and therefore deny those allegations on that basis.

3.        Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 3.

4.        Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 4.

5.        Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 5.

6.        Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 6.

7.        Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 7.

## JURISDICTION AND VENUE

8.        The allegations in Paragraph 8 purport to state conclusions of law to which no responsive pleading is required.  To the extent that a response is required, Defendants/Counter-Plaintiffs admit that Plaintiffs/Counter-Defendants purport that their claims are based on the existence of diversity of citizenship and that their claims exceed $75,000 in value, but deny that there is any factual or legal basis for such claims.

9.        The allegations contained in Paragraph 9 purport to state conclusions of law to which no responsive pleading is required.  To the extent such a response is required, Defendants/Counter-Plaintiffs admit that Plaintiffs/Counter-Defendants claim that this Court is a proper venue.

## FACTUAL ALLEGATIONS

10.     Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 10 and therefore deny those allegations on that basis.

11.     Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 11 and therefore deny those allegations on that basis.

12.     Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 12 and therefore deny those allegations on that basis.

13.     Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 13 and therefore deny those allegations on that basis.

14.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 14. Defendants/Counter-Plaintiffs state that the "PC Sales Agreement" – as defined in the Complaint – is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the PC Sales Agreement.

15.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 15. Defendants/Counter-Plaintiffs state that Attachment B of the PC Sales Agreement, and any and all iterations of that Attachment that may have existed "prior to October 4, 2013," is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Attachment B.

16.     Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 16.

17.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 17. Defendants/Counter-Plaintiffs state that the "Purchase Agreement" – as defined in the Complaint – is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Purchase Agreement.

18.     Defendants/Counter-Plaintiffs deny the first sentence of Paragraph 18 as it is unclear what sale Plaintiffs/Counter-Defendants are referencing and therefore Defendants/Counter-Plaintiffs cannot form a basis to admit or deny that statement. Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 18. Defendants/Counter-Plaintiffs state that the Purchase Agreement is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Purchase Agreement.

19.     Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 19 and therefore deny those allegations on that basis.  Defendants/Counter-Plaintiffs state that the Second Amendment to the PC Sales Agreement – as defined in the Complaint – is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Second Amendment.

20.     Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 20.

21.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 21. Defendants/Counter-Plaintiffs state that the "Brokering Agreement" – as defined in the Complaint – is a document which speaks for itself and which is the best evidence of its contents,

and that this Paragraph contains an incomplete statement of the terms and conditions of the Brokering Agreement.

22.      Defendants/Counter-Plaintiffs admit that section 3(a)(iv) of the Brokering Agreement references a brokering fee of US $0.02 per pound for polycarbonate resin. Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 22. Defendants/Counter-Plaintiffs state that the Brokering Agreement is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Brokering Agreement.

23.      Defendants/Counter-Plaintiffs admit that the Brokering Agreement references a secured letter of credit for up to US $1,000,000.   Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 23.   Defendants/Counter-Plaintiffs state that the Brokering Agreement is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Brokering Agreement.

24.      Defendants/Counter-Plaintiffs admit that the Brokering Agreement references 60-day payment terms for resin purchased from SABIC by Davinci.  Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 24.  Defendants/Counter-Plaintiffs state that the Brokering Agreement is a document which speaks for itself and which is the best evidence of its contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Brokering Agreement.

25.      Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 25 and therefore deny those allegations on that basis.  By way of further response, Defendants/Counter-Plaintiffs respond that

26.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 26. Defendants/Counter-Plaintiffs state that the Purchase Agreement and Brokering Agreement are documents which speak for themselves and which are the best evidence of their contents, and that this Paragraph contains an incomplete statement of the terms and conditions of the Purchase Agreement and Brokering Agreement.  By way of further response, Defendants/Counter-Plaintiffs state that any payment obligations to SABIC were accrued by Plaintiffs/Counter-Defendants, and represent debts that Defendants/Counter-Plaintiffs did not assume as part of the Stock Purchase Agreement because those amounts were never listed on a Closing Balance Sheet by Plaintiffs/Counter-Defendants as required by the Purchase Agreement.

27.     Defendants/Counter-Plaintiffs deny having acknowledged an obligation to pay SABIC as described in the Complaint.  Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 27.

28.     Defendants/Counter-Plaintiffs admit that they made a US $100,000 payment to SABIC in January 2014.  Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 28.

29.     Defendants/Counter-Plaintiffs deny that they had any payment obligations or that they failed to meet any payment obligations.  Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 29 and therefore deny those allegations on that basis.

30.	Defendants/Counter-Plaintiffs deny that any alleged actions by Defendants/Counter-Plaintiffs have harmed Plaintiffs/Counter-Defendants in any way. Defendants/Counter-Plaintiffs lack sufficient knowledge or information regarding Plaintiffs/Counter-Defendants' business relationship to form a belief as to the truth of the remaining allegations contained in Paragraph 30 and therefore deny those allegations on that basis.

31.	Defendants deny that they owed any amount to SABIC. Defendants/Counter-Plaintiffs lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 31 and therefore deny those allegations on that basis.

32.	Defendants/Counter-Plaintiffs admit that Reid Mexico transferred US $60,000 to SABIC on or around May 7, 2014, and that Reid Mexico has provided no authorization for SABIC to transfer those funds to Plaintiffs/Counter-Defendants. Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 32.

33.	Defendants/Counter-Plaintiffs admit the allegations contained in Paragraph 33. By way of further response, Defendants/Counter-Plaintiffs state that Plaintiffs/Counter-Defendants failed to provide the complete books and records of Reid Mexico as required by section 3.5(a)(vii) of the Purchase Agreement, which prevented Defendants/Counter-Plaintiffs from obtaining the Letter of Credit.

34.	Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 34. Further, it is unclear what correspondence Plaintiffs/Counter-Defendants are referencing and therefore Defendants/Counter-Plaintiffs cannot form a basis to admit or deny that statement.

35.	Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 35.

36.     The allegations contained in Paragraph 36 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny that they violated the Brokering Agreement and deny that they have placed any orders for polycarbonate resin.  Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 36.

### COUNT ONE: Breach of Contract --
### Purchase Agreement & Brokering Agreement
### (Davinci, Signature Capital, Grupo Innovador,
### Industrias Servicios, and Reid Mexico)

37.     Defendants/Counter-Plaintiffs incorporate their answers to Paragraphs 1 through 36 of this Answer as if set forth fully herein.

38.     The allegations contained in Paragraph 38 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 38.  By way of further response, Defendants/Counter-Plaintiffs note that Reid Mexico is not a party to either the Purchase Agreement or Brokering Agreement.

39.     The allegations contained in Paragraph 39 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 39.

40.     The allegations contained in Paragraph 40 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny that they breached the provisions of the Purchase Agreement.

41.     The allegations contained in Paragraph 41 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 41.

## COUNT TWO: Breach of Contract – Brokering Agreement
### (Davinci and Reid Mexico)

42.     Defendants/Counter-Plaintiffs incorporate their answers to Paragraphs 1 through 41 of this Answer as if set forth fully herein.

43.     Defendants/Counter-Plaintiffs admit that they did not execute or deliver a secured Letter of Credit to Plaintiffs/Counter-Defendants.   The remaining allegations contained in Paragraph 43 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the remaining allegations contained in Paragraph 43  By way of further response, Defendants/Counter-Plaintiffs state that Reid Mexico is not a party to the Brokering Agreement.

44.     Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 44.

45.     The allegations contained in Paragraph 45 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 45.

46.     The allegations contained in Paragraph 46 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 46.

47.     The allegations contained in Paragraph 47 purport to state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants/Counter-Plaintiffs deny the allegations contained in Paragraph 47.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

Defendants/Counter-Plaintiffs deny that Plaintiffs/Counter-Defendants are entitled to the relief sought, or any other relief.

## AFFIRMATIVE DEFENSES

Further answering the Complaint, Defendants/Counter-Plaintiffs assert the following defenses:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, fails to state facts sufficient to constitute any cause of action, or to set forth a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Waiver)**

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred in that Plaintiffs, by reason of their conduct and actions, have waived any right to assert the claims set forth therein.

### THIRD AFFIRMATIVE DEFENSE
**(Estoppel)**

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred in that Plaintiffs, by reason of their conduct and actions, are estoped from asserting the claims set forth therein.

### FOURTH AFFIRMATIVE DEFENSE
**(Failure of Condition Precedent)**

Plaintiffs/Counter-Defendants have failed to perform conditions precedent, concurrent and/or subsequent to the contracts they entered with Defendants/Counter-Plaintiffs.

### FIFTH AFFIRMATIVE DEFENSE
**(Accord and Satisfaction)**

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred by the doctrines of accord and satisfaction and novation.

## SIXTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred by all applicable statutes of limitations.

## EIGHTH AFFIRMATIVE DEFENSE
### (Frustration of Purpose)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred to the extent that Plaintiffs/Counter-Defendants frustrated the purposes of the contracts under which they seek relief.

## NINTH AFFIRMATIVE DEFENSE
### (Breach of Contract)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred to the extent Plaintiffs/Counter-Defendants have breached the contracts under which they seek relief.

## TENTH AFFIRMATIVE DEFENSE
### (Parol Evidence)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred by the parol evidence rule.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Bad Faith)

Plaintiffs/Counter-Defendants' Complaint, and each cause of action set forth therein, is barred to the extent Plaintiffs/Counter-Defendants have breached their fiduciary duties and duties of good faith and fair dealing.

## TWELFTH AFFIRMATIVE DEFENSE
### (Additional Defenses)

Defendants/Counter-Plaintiffs may have additional defenses of which they are not yet fully aware. Defendants/Counter-Plaintiffs reserve the right to assert additional affirmative defenses after the same shall have been ascertained.

<u>**COUNTERCLAIMS**</u>

Defendants/Counter-Plaintiffs allege Counterclaims as follows:

<u>**FACTUAL ALLEGATIONS**</u>

1.      On or about October 4, 2013, Plaintiffs/Counter-Defendants entered into a purchase agreement (the "Purchase Agreement") with Davinci, Signature Capital, Grupo Innovador, and Industrias Servicios (collectively "Defendants/Counter-Plaintiffs" or "Purchasers") to acquire all of the equity of Reid Mexico, S.A., de C.V. ("Reid Mexico") and Consolidated Plastics, S. De R.L. de C.V. (collectively, the "Companies") from Plaintiffs/Counter-Defendants.

**A.      Plaintiffs/Counter-Defendants' Failure To Provide Account Balance Calculation Required by the Purchase Agreement**

2.      The Purchase Agreement provided that the purchase price, MX $13,750,000, was to be paid by Purchasers in two installments, the second installment subject to modification depending on a determination of working capital under Section 2.5 of the Purchase Agreement.

3.      Section 2.3 of the Purchase Agreement provided that the first installment would be 50% of the purchase price, MX $6,875,000, and paid within seven days of the effective date of the Purchase Agreement.

4.      Section 2.4 of the Purchase Agreement provided that the second installment would be paid following the completion of an accounting described in Section 2.5 if the Plaintiffs/Counter-Defendants were in compliance with the provisions of the Purchase Agreement.

5.      Section 2.5 of the Purchase Agreement required that the Plaintiffs/Counter-Defendants provide calculations of the amount of Accounts Receivable, Accounts Payable, and Cash held by the Companies as of October 4, 2013 (the "Account Balance Calculations"), within

thirty (30) days of the effective date of the Purchase Agreement to determine the amount of the second installment and establish what liabilities and accounts receivable were transferred.

6.      Section 2.5 of the Purchase Agreement provided that this Account Balance Calculation was to be used to determine the final working capital for the Companies to calculate the amount of the second installment and as a final determination of what liabilities the Purchasers were assuming on behalf of the Companies.  If the amount of working capital reflected in the Account Balance Calculation was more than US $730,000.00, the second installment would be adjusted up by that amount, and if the amount of working capital reflected in the Account Balance Calculation was less than US $730,000.00, the second installment would be adjusted down by that amount.

7.      The Plaintiffs/Counter-Defendants failed to ever provide the Account Balance Calculations for the Companies.

8.      On or about November 26, 2013, having not received an Account Balance Calculation from the Plaintiffs/Counter-Defendants, the Purchasers calculated and provided their own Account Balance Calculations to Plaintiffs/Counter-Defendants, concluding that there was an approximately US $205,000 shortfall between the amount of working capital and US $730,000.  Purchasers' balance sheet noted that there could be a debt owed for resin purchases in the amount of approximately US $350,000.

9.      In particular, during the course of developing the Account Balance Calculation to determine the amount of the second installment, the Purchasers noticed that Reid Mexico had an apparent outstanding liability for the purchase of resin of approximately US $350,000, or MX $4,602,984.  But this amount was never identified, confirmed, or disclosed by Plaintiffs/Counter-

Defendants as part of Plaintiffs/Counter-Defendants' required balance sheet, the purpose of which was to note any liabilities that Purchasers were assuming.

10.     The Plaintiffs/Counter-Defendants responded to Purchasers that the shortfall was only approximately US $165,000, but did not provide any balance sheet to support that calculation.   Thus, Plaintiffs/Counter-Defendants did not identify any debt for resin that Purchasers would assume as part of the Purchase Agreement.

11.     The Plaintiffs/Counter-Defendants and the Purchasers eventually agreed to a compromise amount of approximately US $186,000 on or about December 6, 2013.   Still, Plaintiffs/Counter-Defendants did not provide a balance sheet; nor did they note elsewhere an existing debt for resin purchases that Purchasers purportedly assumed as part of the Purchase Agreement.

12.     In an effort to ensure that Reid Mexico would not have any outstanding debts, Reid Mexico contacted SABIC to determine what, if any, debts that Plaintiffs/Counter-Defendants had accrued during their time as owners of Reid Mexico.   SABIC responded that Reid Mexico had an outstanding balance owed of US $359,707.39.   Desiring to extinguish any Reid Mexico debts, Reid Mexico negotiated with SABIC to pay that debt in installments, and the Purchasers made their first payment of US $100,000 in January 2014.

13.     The Purchasers later made a US $60,000 payment to SABIC on or about May 7, 2014.   Upon information and belief, by the time of this second payment, Plaintiffs/Counter-Defendants had paid the amount that Plaintiffs/Counter-Defendants owed to SABIC to fulfill their outstanding liability for the purchase of resin.

14.     SABIC informed the Purchasers and requested instructions on how to handle the funds.   SABIC continues to hold the funds awaiting those instructions.

15.     Because Plaintiffs/Counter-Defendants had never provided an Account Balance Calculation setting out the liabilities of the Companies as required under the Purchase Agreement, this was not a liability that the Purchasers had assumed under the Purchase Agreement, and the Purchasers were not required to make these payments.

16.     As a result, Defendants/Counter-Plaintiffs paid US $160,000 to SABIC for debts owed to SABIC by Plaintiffs/Counter-Defendants.  Defendants/Counter-Plaintiffs are entitled to be reimbursed for the amounts expended on Plaintiffs/Counter-Defendants' behalf.

**B.      Plaintiffs/Counter-Defendants' Failure To Provide The Complete Books And Records Of The Companies As Required By The Purchase Agreement**

17.     The Purchase Agreement further provided in Section 3.1(a)(vii) that Plaintiffs/Counter-Defendants were required to provide "[t]he original Books and Records of the Companies" within seven (7) days of the execution of the Purchase Agreement.

18.     Defendants/Counter-Plaintiffs notified Plaintiffs/Counter-Defendants that they required this information as early as November 12, 2013, and Defendants/Counter-Plaintiffs continued to request this information until the present.

19.     Plaintiffs/Counter-Defendants, however, have failed to provided the complete books and records of the Companies and have failed to comply with Defendants/Counter-Plaintiffs' requests.

20.     Defendants/Counter-Plaintiffs required this information in order to fully comply with Mexican tax laws in a timely and accurate manner and claim a tax benefit in excess of US $1,500,000.

21.     Because Plaintiffs/Counter-Defendants failed to provide the complete books and records as required by the Purchase Agreement, Defendants/Counter-Plaintiffs have been unable to collect the tax credits to which they are entitled.

**C.** **Defendants/Counter-Plaintiffs Are Unable To Secure Credit, Requiring Them To Modify Their Customer Relationships And In Turn Lose Profits**

22.     Plaintiffs/Counter-Defendants' failure to provide an accurate Account Balance Calculation to determine the working capital of the Companies, as well as Plaintiffs/Counter-Defendants' failure to provide the books and records of the Companies as required by the Purchase Agreement, prevented Reid Mexico from securing adequate credit.

23.     Because Reid Mexico was unable to secure credit, it lacked the liquidity necessary to continue to purchase polycarbonate resin from SABIC through Plaintiffs/Counter-Defendants as it had done before Defendants/Counter-Plaintiffs purchased Reid Mexico.

24.     To continue operating, Reid Mexico was forced to alter its business model and cease purchasing resin to manufacture bottles for its clients.  Instead, Reid Mexico is limited to merely manufacturing bottles for clients using only resin provided by the clients themselves.

25.     As a result, Reid Mexico has had to adjust the pricing offered to clients, and its profit margins on each bottle it manufactures are lower than they would have been otherwise, resulting in lost profits of approximately US $125,000 per month.

## COUNT ONE: BREACH OF CONTRACT

26.     Defendants/Counter-Plaintiffs re-allege and reiterate each of the foregoing Paragraphs of their Counterclaims as if fully set forth herein.

27.     Plaintiffs/Counter-Defendants failed to provide the Defendants/Counter-Plaintiffs with an Account Balance Calculation as required by the Purchase Agreement.

28.     Because Plaintiffs/Counter-Defendants failed to provide the Account Balance Calculation setting out the liabilities Defendants/Counter-Plaintiffs assumed under the Purchase Agreement, Defendants/Counter-Defendants did not assume the approximately US $350,000, or MX $4,602,984, debt Reid Mexico had previously owed to SABIC.

29.     Defendants/Counter-Plaintiffs therefore paid US $160,000 to SABIC for a debt retained by Plaintiffs/Counter-Defendants in order to extinguish a debt for Reid Mexico that Plaintiffs/Counter-Defendants incurred and retained.

30.     For the reasons set forth above, Plaintiffs/Counter-Defendants are in material breach of their contractual obligations and duties under the Purchase Agreement and owe Purchasers for the monies expended to extinguish Plaintiffs/Counter-Defendants' debts.

31.     Furthermore, Plaintiffs/Counter-Defendants failed to provide the complete books and records of the Companies as required by the Purchase Agreement despite multiple continuing requests by Defendants/Counter-Plaintiffs.

32.     Because Defendants/Counter-Plaintiffs did not have the complete books and records of the Companies, it was unable to fully comply with Mexican tax laws in a timely and accurate manner and claim a tax benefit in excess of US $1,500,000.

33.     Defendants/Counter-Plaintiffs have therefore been unable to collect the tax benefits to which they are justly entitled.

34.     Accordingly, Plaintiffs/Counter-Defendants are in material breach of their contractual obligations and duties under the Purchase Agreement.

35.     Additionally, Because Plaintiffs/Counter-Defendants failed to provide both the Account Balance Calculation to accurately determine the working capital of the Companies as well as the complete books and records of the Companies as required by the Purchase Agreement, Reid Mexico was unable to obtain a letter of credit or secure adequate credit to remain sufficiently liquid to continue purchasing resin.

36.     To continue operating, Reid Mexico therefore altered its business model to produce bottles out of resin provided by its clients, resulting in lower profit margins and therefore lost profits.

37.     For the reasons set forth above, Plaintiffs/Counter-Defendants are in material breach of their contractual obligations and duties under the Purchase Agreement and owe Defendants/Counter-Plaintiffs lost profits resulting from Plaintiffs/Counter-Defendants breaches of the Purchase Agreement.

38.     As a direct and proximate result of Plaintiffs/Counter-Defendants' breaches of the Purchase Agreement, Defendants/Counter-Plaintiffs have sustained damages and are entitled to all direct, indirect, consequential, special, compensatory and other damages resulting from that breaches of contract.

### COUNT TWO: UNJUST ENRICHMENT

39.     Defendants/Counter-Plaintiffs re-allege and reiterate each of the foregoing Paragraphs of their Counterclaims as if fully set forth herein.

40.     Plaintiffs/Counter-Defendants failed to provide the Defendants/Counter-Plaintiffs with an Account Balance Calculation as required by the Purchase Agreement.

41.     Because Plaintiffs/Counter-Defendants failed to provide the Account Balance Calculation setting out the liabilities Defendants/Counter-Plaintiffs assumed under the Purchase Agreement, Defendants/Counter-Defendants did not assume the approximately US $350,000, or MX $4,602,984, debt Reid Mexico had previously owed to SABIC.

42.     Defendants/Counter-Plaintiffs therefore paid US $160,000 to SABIC for a debt retained by Plaintiffs/Counter-Defendants in order to extinguish a debt for Reid Mexico that Plaintiffs/Counter-Defendants incurred and retained.

43.     Plaintiffs/Counter-Defendants have failed to return or reimburse Defendants/Counter-Plaintiffs for the US $160,000 that Defendants/Counter-Plaintiffs paid to SABIC that was applied to Plaintiffs/Counter-Defendants' debt.

44.     Plaintiffs/Counter-Defendants have therefore been unjustly enriched at Defendants/Counter-Plaintiffs expense by unlawfully retaining and failing to return, either directly or through authorization to SABIC, the US $160,000 that Defendants/Counter-Plaintiffs paid on Plaintiffs/Counter-Defendants' behalf.

45.     Defendants/Counter-Plaintiffs thus seek reimbursement of monies expended to extinguish Plaintiffs/Counter-Defendants' debts.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Defendants/Counter-Plaintiffs demand judgment as follows:

A. An award of money damages to be proved at trial, including pre- and post-judgment interest as provided by law;

B. An award of attorneys' fees incurred in pursuing its coverage claim in this matter;

C. An award of punitive or exemplary damages;

D. Such orders, including injunctive relief, as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

E. Such other and further relief as this Court deems proper and to which Defendants/Counter-Plaintiffs are justly entitled.

Dated:  July 18, 2014.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*

Of Counsel:

Colm F. Connolly (No. 3151)
Jody C. Barillare (No. 5107)

Craig A. Stanfield
Lewis A. Smith
Chad E. Stewart
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:  713.890.5000
Fax:  713.890.5001
cstanfield@morganlewis.com
lsmith@morganlewis.com
cstewart@morganlewis.com

The Nemours Building
1007 N. Orange Street, Suite 501
Wilmington, DE 19801
Telephone: 302.574.3000
Fax: 302.574.3001
cconnolly@morganlewis.com
jbarillare@morganlewis.com

*Attorneys For Defendants*
*Davinci Capital, S.A.P.I. de C.V., Signature*
*Capital, S.A.P.I. de C.V. SOFOM E.N.R.,*
*Grupo Innovador Administrativo, S.A. de C.V.,*
*Industrias y Servicios Tecnicos de Bajio S.A. del*
*C.V., and Reid Mexico, S.A., de C.V.*